____ FILED    ___ ENTERED
____ LOGGED    _____ RECEIVED

2:46 pm, Aug 20 2025

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____DG_____Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.  1:25-mj-02052-DRM |
| | * | |
| ADOLFO NIMROD HERNANDEZ | * | |
| RAMOS | * | |
| | * | |
| | * | |

*******

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Jeffrey J. Nugent, being duly sworn, depose and state the following:

1.      I am a Special Agent with the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and have served in that capacity since September 2019.  I am authorized by law to interrogate, arrest, search, and seize aliens who are unlawfully present in the United States pursuant to Title 8, United States Code, Section 1357. Throughout my career, I have been involved in the investigation of numerous cases involving the illegal reentry of aliens and other violations of the Immigration & Nationality Act (INA).

2.      I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of body worn camera (BWC) footage from the Immigration and Customs Enforcement (ICE) officers involved in the June 6, 2025, encounter with the Defendant, Adolfo Nimrod Hernandez-Ramos (*hereinafter* "HERNANDEZ-RAMOS"), and other materials including reports and statements of other law enforcement officers (LEOs) involved in the investigation.

3.      Because I have submitted this Affidavit for the limited purpose of establishing probable cause, I have not included every detail of every aspect of the investigation. Rather, I have

set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

4.      This Affidavit is submitted in support of a criminal complaint and arrest warrant for HERNANDEZ-RAMOS, charging him with assaulting, resisting, or impeding certain officers or employees in violation of 18 U.S.C. § 111.

**PROBABLE CAUSE**

5.      HERNANDEZ-RAMOS is a citizen and national of Honduras and not a native, citizen, or national of the United States.  His immigration history is set forth below.

6.      HERNANDEZ-RAMOS entered the United States at an unknown date and time, at which time he was in violation of 8 U.S.C. § 1182 212 (a)(6)(A)(i) of the Immigration and Nationality Act and was "an alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."

7.      On or about May 19, 2025, a DHS special agent put together a target packet of potential individuals subject to deportation. The main target was an individual against whom a final order of removal had been issued, who resided in the 300 block of Melvin Avenue in Catonsville, Maryland.

8.      The defendant, HERNANDEZ-RAMOS, was also in the target packet based on information that he also lived in the 300 block of Melvin Avenue, close to the individual who was subject to removal.  In addition to his residence, the packet contained other identifying information, including HERNANDEZ-RAMOS' photograph, name, date of birth, and driver authorization ID number. The target packet also listed HERNANDEZ-RAMOS' status as "EWI?", indicating he

was potentially subject to entry without inspection.  That possibility was based on various checks done on HERNANDEZ-RAMOS, including database checks indicating no immigration entry encounters or other records for HERNANDEZ-RAMOS, and that HERNANDEZ-RAMOS had been issued a Maryland state identification card classified as "NOT FOR FEDERAL IDENTIFICATION." Together, that information caused the special agent to believe that HERNANDEZ-RAMOS had "entered without inspection."

9.      Attempting to locate the target who had a pending final order of removal, on June 6, 2025, officers conducted surveillance in the 300 block of Melvin Avenue in Catonsville, Maryland. At approximately 10:00 am, officers observed HERNANDEZ-RAMOS exit his residence and get into a vehicle. ICE officers then followed HERNANDEZ-RAMOS to the area of 5800 Baltimore National Pike, Catonsville, Maryland.

10.      At that location, HERNANDEZ-RAMOS parked his vehicle near a Ross Department store. As officers pulled towards HERNANDEZ-RAMOS' car, he exited his vehicle and began running.  Officers, wearing ballistic vests with "HSI" on them and equipped with BWCs, exited their vehicle and approached HERNANDEZ-RAMOS. As an officer attempted to grab HERNANDEZ-RAMOS' arm, HERNANDEZ-RAMOS pulled his arm away from the officer and began to run towards the direction of the Ross store.

11.      Officers pursued HERNANDEZ-RAMOS. As depicted in the BWC video, once they crossed the threshold of the business, the officers and HERNANDEZ-RAMOS fell to the ground. As officers attempted to handcuff HERNANDEZ-RAMOS, they repeatedly told him he was under arrest and ordered him to put his hands behind his back. HERNANDEZ-RAMOS refused to comply, tensed his body, and began to struggle and attempt to wrestle away from officers.

12.     As the officers continued to effectuate the arrest, HERNANDEZ-RAMOS questioned why he was being arrested. A crowd of onlookers started to form, encouraging HERNANDEZ-RAMOS to resist. Attempting to de-escalate the situation, one of the officers indicated that he had a "warrant" in the car. However, there was no actual warrant for HERNANDEZ-RAMOS' arrest. Officers again advised that he was under arrest and that they were "Homeland Security."   In response, HERNANDEZ-RAMOS replied, "So... so! Show me the warrant." When told to cooperate, he stated, "Why would I want to cooperate for what? I don't want to cooperate with you!" During the encounter, HERNANDEZ-RAMOS kicked at them, continued to flail his arms about, grabbed a table, and clinched his arms and legs together to prevent his arrest, as depicted in the BWC video.

13.     Officers continued to try to place HERNANDEZ-RAMOS into custody, and he actively fought back and resisted. During the incident, as depicted in the BWC video, officers were able to secure one handcuff on HERNANDEZ-RAMOS but struggled to get his other hand cuffed. At one point, HERNANDEZ-RAMOS grabbed the open cuff and told an officer, "I'm going to slice your eye out."

14.     Soon thereafter, uniformed members of the Baltimore County Police Department arrived and assisted with the arrest of HERNANDEZ-RAMOS. After continuing to resist and struggle with arresting officers, HERNANDEZ-RAMOS was eventually taken into custody. On the way out of the store, heading to the transporting vehicle, HERNANDEZ-RAMOS attempted to headbutt one of the DHS officers.

15.     Due to the entirety of his actions, both DHS officers suffered several injuries, including a bruised knee, an injured right ankle/Achilles, and lacerations to their arms and hands.

16.    For the foregoing reasons, the Defendant did commit offenses in violation of 18 U.S.C. § 111.  The ICE officers involved in the apprehension of the Defendant were "officer[s] or employee[s]" of Immigration Customers Enforcement, which is an agency of the United States government and were, at the time of the events herein, "engaged in…the performance of official duties," that is the enforcement of United States immigration law. The Defendant's conduct was also on "account" of the ICE officers' performance of their official duties.  The Defendant's physical resistance and struggle with the ICE officers also constituted forcibly assault, resisting, opposing, impeding, and/or interference with the federal officers as prohibited by 18 U.S.C. § 111.

## CONCLUSION

17.    Accordingly, pursuant to the facts set forth above, I submit that probable cause exists for the issuance of a criminal complaint and warrant for the arrest of Adolfo Nimrod HERNANDEZ-RAMOS for violations of 18 U.S.C. § 111.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Special Agent Jeffery J. Nugent
Department of Homeland Security

Sworn to before me over the telephone and signed by me pursuant to Federal Criminal Procedure Rules 4.1 and 4(d) this __14th__ day of August, 2025.

HONORABLE DOUGLAS R. MILLER
UNITED STATES MAGISTRATE JUDGE